UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>RONALD DEATON STATON,<br>    Defendant. | CRIMINAL NO. 6:06-107-KKC-HAI<br><br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Magistrate Judge Ingram's Recommended Disposition (DE 75) filed October 7, 2015, and Defendant's Objections filed October 21, 2015. (DE 79).

In April of 2007, this Court sentenced Defendant Ronald Staton to 93 months of imprisonment followed by five years of supervised release for possession of Methadone and Oxycodone with intent to distribute and carrying a firearm during or in relation to a drug trafficking offense. (DE 31.) On March 10, 2015, Defendant stipulated to his first supervised release violation for alcohol consumption and operating a motor vehicle without a license. (DE 50.) This Court imposed a four-week term of incarceration followed by four years of supervised release for those violations. (DE 50.) At Defendant's request, this Court required him to wear a Transdermal Alcohol Detector ("TAD") for the first six months of his post-revocation supervised release. The TAD, produced by BI Industries ("BI"), attempts to monitor the wearer's transdermal alcohol level—essentially the quantity of alcohol in their sweat—by transmitting readings from the sensor anklet to BI headquarters for analysis and, if necessary, reports to the relevant authorities contracting with BI.

The currently alleged violation results from a "drinking event" reported by BI after Defendant's TAD reported an "alcohol event" on July 28, 2015. (DE 75 at 2.). Judge Ingram conducted a final hearing on September 19, 2015, "to determine whether the government could prove by a preponderance of the evidence that [Defendant} had violated his condition of release by drinking alcohol." (DE 75 at 3.) Judge Ingram, satisfied by the evidence presented, recommended a sentence of eight months imprisonment with fourteenth months of supervised release to follow. (DE 75 at 7–8.) Defendant filed objections to the Recommended Disposition on October 21, 2015. (DE 79.)

This Court must conduct a de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C § 636(b). Defendant (1) challenges Judge Ingram's finding that Rick Miller was sufficiently qualified to testify as to his conclusions about Defendant's TAD alerts, (2) claims the TAD evidence itself was insufficiently reliable, and (3) disputes whether the Government could meet its burden without Miller's testimony and the allegedly unreliable TAD evidence. Defendant's final claim relies on the alternative explanations he offers for the reported presence of alcohol in his perspiration. Namely, that either separately, or in combination, Defendant's using eye drops containing alcohol, using lotion containing alcohol, and exposure to the potent cleaning solvent CLR led to his body absorbing a sufficient quantity of alcohol to set off the TAD alert.

The government [must] prove violation of supervised-release terms by a preponderance of the evidence. *United States v. Givens*, 786 F.3d 470, 473 (6th Cir. 2015). However, supervised release proceedings are administrative, rather than judicial. *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir.1997). Consequently, convicts alleged to have violated their supervised release terms are not entitled to "the full panoply of process due to

a criminal accused of a crime in the first instance." *Givens*, 786 F.3d at 472. Defendant is, thus, not guaranteed the full protections of the Federal Rules of Evidence. *See id.* Due process only requires that the determination be based on "reasonably reliable" evidence. *Taylor v. U.S. Parole Comm'n*, 734 F.2d 1152, 1155 (6th Cir. 1984).

The nature of supervised release proceedings does not require application of the gatekeeping function appropriate for evaluating expert testimony in a trial setting. *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In these cases, the trier of fact and the proposed gatekeeper were one and the same. Under the circumstances, Judge Ingram was more than capable of determining the reliability of the Government's expert, and according it appropriate weight, that is all due process requires. Here, Rick Miller, a product engineer involved in his employer's development of the TAD, testified that the TAD readings contained in Defendant's report not only indicated that Defendant had alcohol in his system, but also that the presence of alcohol was the result of drinking. Defendant had a full and fair opportunity to cross-examine the government's expert and point out any alleged deficiencies, which Judge Ingram clearly considered in determining the weight to give his testimony. Miller's prior experience with the TAD—his personal use, 2007 non-chemical testing, review of prior charts—provide a sufficiently reliable basis for concluding Defendant's report was a drinking event. Likewise, his testimony included numerous indicia of the TAD's reliability.

The simple implausibility of Defendant's offered alternative explanations, Mr. Miller's testimony, the physical evidence found at Defendant's home, and Defendant's admitted problems with alcoholism were more than sufficient to satisfy the Government's preponderance burden.

Accordingly, **IT IS ORDERED** that:

1. The Magistrate Judge's Recommended Disposition (DE 75) is **ADOPTED**;

2. Judgment shall be entered consistent with this Order; and

3. Defendant's motion to schedule a status conference in this matter (DE 81) is **DENIED AS MOOT**.

Dated March 3, 2016.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY